**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**

| | | |
|---|---|---|
| JUDITH MURPHY WARREN<br>47 THOMPSON AVENUE<br>FORT MITCHELL, KY 41017<br><br>Plaintiff,<br><br>v.<br><br>KERRY ROCKFORD, INC.<br>d.b.a. PILOT FREIGHT SERVICES<br>1835 AIRPORT EXCHANGE BLVD.,<br>SUITE 130<br>ERLANGER, KY 41018<br><br>Defendant.<br><br>Also Serve:<br><br>Leonard G. Rowekamp, Registered Agent<br>502 Greenup Street<br>Covington, KY 41011 | : | Case No.:<br><br>Judge ____________________<br><br><br><br><br><br>**COMPLAINT WITH JURY DEMAND ENDORSED HEREON** |

Comes now the Plaintiff, Judy Murphy Warren ("Plaintiff"), by counsel, and for her Complaint against Defendant Kerry Rockford Enterprises, Inc., d.b.a. Pilot Freight Services ("Defendant"), states as follows:

## I. PARTIES

1. Plaintiff is a citizen and resident of Fort Mitchell, Kenton County, Kentucky, and formerly employed by Defendant until her unlawful termination on November 2, 2015, for taking FMLA leave.

2. Defendant is a for-profit corporation incorporated under the laws of the Commonwealth of Kentucky with its corporate headquarters in Erlanger, Kenton County, Kentucky. Defendant is an employer within the meaning of the Fair Labor Standards Act of 1938, 29 U.S.C. § 206 *et seq*. ("FLSA") and the Family Medical Leave Act, 42 U.S.C § 2601 *et seq*. ("FLSA").

## II.  JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1331, as this case is being brought under federal statutes, the FLSA and FMLA.  This Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district and division pursuant to 28 U.S.C § 1391 because Defendant resides within this district, and a substantial part of the events or omissions giving rise to the claims herein occurred within this district and division.

## III.  FACTUAL BACKGROUND

5. Plaintiff, who is currently 63 years old, was hired by Defendant for a customer service position on October 17, 2004.

6. Plaintiff worked faithfully in her Customer Service Representative position at Defendant's location at the Greater Cincinnati and Northern Kentucky International Airport, near Defendant's corporate headquarters in Erlanger, Kentucky.

7. Plaintiff was never a supervisor, and performed no supervisory duties.

8. Plaintiff regularly worked more than 40 hours per week.  Plaintiff was never paid overtime during those weeks in which she worked more than 40 hours per week.

9. Sometime in 2014, Defendant instituted an automated clock-in system for Plaintiff and her hourly-paid, non-exempt, coworkers.  Prior to that date, Defendant did not keep track of the hours worked each week by Plaintiff and her similarly-situated coworkers.

10. In the fall of 2014, during the build-out of Defendant's new CVG location, Defendant's management employees Kevin Hamilton and Allison Czirri took Plaintiff aside and asked her whether there were any duties she really did not want to do.  Plaintiff replied, "receptionist duties."

11. Hamilton and Czirri also asked Plaintiff where she wanted to sit.  She said, "any

where but up front."

12. Shortly thereafter, Plaintiff was placed in exactly that location (up front), and assigned to exactly that position (receptionist), which she had declined. The position entailed scanning documents, answering phones, etc.; a complete waste of the skill set that Plaintiff had displayed during a decade of faithful, loyal service to Defendant.

13. On September 1, 2015, Plaintiff went to see her family doctor, Dr. William Reutman, because she was suffering anxiety, sleeplessness and depression by having been effectively demoted from her position as Customer Service Representative, in such a public and humiliating way, for reasons that were never explained to her by Defendant's management.

14. Dr. Reutman told Plaintiff that she needed to take some time off from work.

15. Defendant, through its Human Resources subcontractor, Ideal HR, put Plaintiff on FMLA leave. Defendant's Manager Kevin Hamilton told Plaintiff at the time to "take as much as time as you need." Tina Hinsley, Defendant's Regional General Manager, called Plaintiff in early October 2015 to echo Mr. Hamilton's comments, noting "we support you."

16. In early October 2015, Plaintiff called Defendant's Regional Manager, Ryan King, to tell him that her FMLA leave had been extended, and asked about a severance package. King's reply was to the effect that he could not approve such a package but would pass along the request to Ms. Hinsley, Defendant's Regional General Manager.

17. Approximately one hour later, Michelle Gillespie from Defendant's agent Ideal HR, called Plaintiff and berated her for trying to negotiate a severance package directly with Defendant, telling Plaintiff that what she was doing was "illegal."

18. Dr. Reutman referred Plaintiff to a psychologist, Dr. Kelly West. Plaintiff saw Dr. West on October 6 and October 20, 2015. At Plaintiff's October 20 appointment with Dr. West, she diagnosed Plaintiff as "clinically depressed," and told her that she should not continue

working at Defendant.

19. Plaintiff's FMLA leave was set to expire on October 31. In order to extend that leave, Defendant's agent Ideal HR insisted that the extension request come directly from a "psychiatrist." Plaintiff tried to explain to the Ideal HR representatives that she was not being treated by a psychiatrist, but was in fact being treated by a psychologist.

20. Defendant's agent Ideal HR continued to insist that any FMLA leave extension would have to come from Plaintiff's treating psychiatrist.

21. Ms. Hinsley, Defendant's Regional General Manager, had called Plaintiff on October 22 to follow up on the severance discussion Plaintiff had initiated with Mr. King. Plaintiff suggested what an appropriate package would look like, to which Ms. Hinsley said, "that's not unreasonable. I'll be in touch."

22. On October 30, with her FMLA leave set to expire and Defendant's agent Ideal HR unwilling to extend it, Plaintiff called Ms. Hinsley to find out what had been decided about a severance package. Ms. Hinsley said, inexplicably, "I can't talk to you about this because you are on FMLA leave. I will call you this weekend." Ms. Hinsley did not call Plaintiff that weekend.

23. Plaintiff called Mr. King at 7:00 a.m. on Monday, November 2, to say that she would not be in because she was still sick.

24. Mr. King told her to take care of herself and that he hoped Plaintiff felt better.

25. Approximately two hours later, Ms. Hinsley and Ms. Gillespie called Plaintiff on a conference call to tell her that she was fired. Plaintiff said to Ms. Hinsley, "Tina, were you going to call me?" Ms. Hinsley replied, "that's not my position, that is HR's job."

## IV. PLAINTIFF'S CLAIMS

### A. COUNT I
### (FAILURE TO PAY OVERTIME UNDER THE FAIR LABOR STANDARDS ACT)

26. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

27. Section 6 of the FLSA, 29 U.S.C. § 206, establishes the right to be paid minimum wages. Unless exempt, employees covered by the Act, such as Plaintiff herein, must receive overtime pay for hours worked over 40 in a work week at a rate not less than time and one-half their regular rate of pay.

28. Plaintiff was not exempt from the overtime pay requirements of the FLSA.

29. For the three years preceding the termination of Plaintiff's employment, Defendant failed and refused to pay Plaintiff the overtime pay she was entitled to under the FLSA.

30. Defendant's actions constituted a willful violation of the FLSA.

31. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages for which she is entitled to recovery under the FLSA.

**B. COUNT II**
**(FMLA INTERFERENCE)**

32. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

33. Plaintiff suffered from a serious medical condition as defined by the FMLA.

34. Plaintiff was an "eligible employee" as defined by 29 U.S.C. § 2611 because Defendant employed her for at least 12 months, she worked at least 1,250 hours in the previous 12-month period, and Defendant employed 50 or more employees.

35. Defendant interfered with Plaintiff's right to exercise FMLA leave including terminating her employment because she took FMLA protected leave.

36. Defendant's actions were willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights.

37. As a direct and proximate result of Defendant's intentional, willful and wanton unlawful conduct, Plaintiff has been damaged and is entitled to judgment for all damages caused

by Defendant's misconduct.

**C. COUNT III**
**(FMLA RETALIATION)**

38. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

39. Plaintiff was an "eligible employee" as defined by 29 U.S.C. § 2611 because Defendant employed her for at least 12 months, she worked at least 1, 250 hours in the previous 12-month period, and Defendant employed 50 or more employees.

40. Plaintiff engaged in a protected activity under the FMLA by taking approved leave.

41. Defendant took a materially adverse employment action against Plaintiff by directly (and indirectly through its agent HR Ideal) fabricating an excuse to terminate Plaintiff's employment in retaliation for exercise of her rights under the FMLA.

42. Plaintiff's protected activity caused Defendant to take the adverse action.

43. Defendant has engaged in a pattern and practice of such retaliation against employees for taking FMLA leave.

44. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages for which she is entitled to recovery under the FMLA.

**D. COUNT IV**
**(INTENTIONAL AFFLICTION OF EMOTIONAL DISTRESS)**

45. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

46. Defendant owed a duty to Plaintiff to refrain from intentionally injuring Plaintiff.

. 47. Defendant breached its duty to Plaintiff.

48. Defendant's intentional actions as set forth above approximately caused injury to Plaintiff in the form of embarrassment, mental anguish, loss of reputation, loss of self-esteem, and other emotional distress, and caused physical injury in the form of other adverse health effects.

49. Defendant acted willfully, maliciously, with spite and ill will, and with a reckless disregard for Plaintiff's legal rights.

50. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages for which she is entitled to recovery under state law.

## V. DAMAGES

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

(a) That Plaintiff be reinstated to her employment effective November 2, 2015;

(b) That Plaintiff be awarded all lost pay and benefits;

(c) That Plaintiff be awarded compensatory damages, including damages for emotional distress;

(d) That Plaintiff be awarded liquidated damages:

(e) That Plaintiff be awarded punitive damages;

(f) That Plaintiff be awarded pre-judgment and post-judgment interest;

(g) That Plaintiff be compensated for the adverse tax consequences of receiving a lump sum award rather than her compensation over several separate tax years;

(h) That Plaintiff be awarded reasonable attorneys' fees and costs; and

(i) That Plaintiff be awarded all other legal and equitable relief to which she may be entitled.

Respectfully submitted,

/s/ Randolph H. Freking

Randolph H. Freking (KBA# 23509)
Brian P. Gillan (pending *pro hac vice* admission)
Trial Attorneys for Plaintiff
FREKING MYERS & REUL LLC
525 Vine Street, Sixth Floor
Cincinnati, OH 45202
Phone: (513) 721-1975/Fax: (513) 651-2570
*randy@fmr.law*
*bgillan@fmr.law*

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

/s/ Randolph H. Freking